UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

| | |
|---|---|
| MARK FRASCARELLI,<br><br>                Plaintiff,<br><br>     v.<br><br>PHYSICIANS REALTY TRUST, JOHN T. THOMAS, TOMMY G. THOMPSON, STANTON D. ANDERSON, MARK A. BAUMGARTNER, ALBERT C. BLACK, JR., PAMELA J. KESSLER, AVA E. LIAS-BOOKER, RICHARD A. WEISS, and WILLIAM E. EBINGER, | Case No. 24-cv-00047<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mark Frascarelli ("Plaintiff"), by the undersigned attorneys, alleges as follows based (i) upon personal knowledge with respect to Plaintiff's own acts, and (ii) upon information and belief as to all other matters based on the investigation conducted by Plaintiff's attorneys, which included, among other things, a review of relevant U.S. Securities and Exchange Commission ("SEC") filings, and other publicly available information.

**NATURE OF THE ACTION**

1.     This action is brought by Plaintiff against Physicians Realty Trust ("PRT" or the "Company") and the members of the Company's board of trustees ("Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a) and § 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9(a) ("Rule 14a-9"). Plaintiff's claims arise in connection with the solicitation of PRT's public stockholders to vote in favor of a stock-for-stock merger transaction ("Merger") under a merger agreement ("Merger Agreement") pursuant to which PRT will merge with and into an affiliate of Healthpeak Properties, Inc. ("Healthpeak"), and in

exchange PRT stockholders will receive 0.674 shares of newly issued Healthpeak common stock for each PRT share held ("Exchange Ratio"). The Exchange Ratio is fixed and will not be adjusted to reflect stock price changes of PRT and Healthpeak prior to the closing of the Merger. As a result of the Merger, Healthpeak and PRT shareholders will own approximately 77% and 23% of the combined company, respectively.

2. On October 30, 2023, PRT and Healthpeak issued a press release announcing the Merger. The press release advised that "BofA Securities and KeyBanc Capital Markets Inc. are serving as *lead financial advisors*" to PRT. The press also advised that BMO Capital Markets Corp. is serving as a financial advisor to PRT.

3. On December 15, 2023, Healthpeak filed a Form S-4 with the SEC, which also constituted a preliminary proxy ("Proxy") of PRT under Section 14(a) of the Exchange Act to solicit the votes of PRT stockholders to vote in favor the Merger. As the Proxy states, "the Physicians Realty Trust board of trustees is soliciting proxies from its shareholders." The Proxy, however, contains material misrepresentations and omissions, and therefore violates Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

4. The Proxy advises that a special meeting ("Special Meeting") of PRT stockholders will be held on a date yet to be determined, to vote on the Merger ("Stockholder Vote"). The Proxy further advises PRT stockholders that "[y]our vote is important," and that approval of the Merger "requires the affirmative vote of a majority of the votes entitled to be cast by holders of Physician Realty Trust common shares."

5. The material misrepresentations and omissions in the Proxy must be cured in advance of the Stockholder Vote to enable PRT stockholders to cast informed votes with respect to the Merger. Therefore, Plaintiff seeks to enjoin the Defendants from taking any further steps to

consummate the Merger and schedule the Stockholder Vote, until such violations are cured. Alternatively, if the Merger is consummated, Plaintiff reserves the right to recover damages suffered by Plaintiff and other PRT stockholders as a result of such violations, and/or seek other appropriate relief.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has personal jurisdiction over each of the Defendants because each has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. *See Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015) (because Exchange Act provides for nationwide service of process, and Defendant resides within the United States, and conducts business within the United States, he should reasonably anticipate being hauled into court in the United States, and Court's exercise of personal jurisdiction over Defendant with respect to Plaintiff's securities fraud claim is proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) ("[w]hen the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

8. Venue is proper under 28 U.S.C. § 1391(b) because Defendants transact business in this District. In particular, the Company's common stock trades under the ticker "DOC" on New

York Stock Exchange, which is headquartered in this District, and the false and misleading Proxy was filed with the SEC, which has a regional office in this District. *See Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (venue appropriate in the Southern District of New York where an act or transaction constituting the alleged violation occurred in the Southern District of New York); *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (venue in tender offer fraud prosecution appropriate in District).

## PARTIES

9. Plaintiff is and has been a stockholder of PRT common stock at all relevant times.

10. Defendant PRT is a Maryland corporation with its principal executive offices located at 309 N. Water Street, Suite 500, Milwaukee, Wisconsin 53202. PRT develops, owns and manages healthcare properties that are leased to physicians, hospitals, and healthcare delivery systems.

11. Defendant John T. Thomas presently serves as PRT's President and Chief Executive Officer, and has served as a member of the Board at all relevant times.

12. Defendant Tommy G. Thompson presently serves as Chairman of the Board, and has served as a member of the Board at all relevant times.

13. Defendant Stanton D. Anderson has served as a member of the Board at all relevant times.

14. Defendant Mark A. Baumgartner has served as a member of the Board at all relevant times.

15. Defendant Albert C. Black, Jr. has served as a member of the Board at all relevant times.

16. Defendant Pamela J. Kessler has served as a member of the Board at all relevant

times.

17.     Defendant Ava E. Lias-Booker has served as a member of the Board at all relevant times.

18.     Defendant Richard A. Weiss has served as a member of the Board at all relevant times.

19.     Defendant William A. Ebinger has served as a member of the Board at all relevant times.

20.     Defendants identified in paragraphs 11 to 19 are collectively referred to herein as the "Individual Defendants," and together with PRT, collectively, the "Defendants."

## SUBSTANTIVE ALLEGATIONS[1]

### Progression of Merger Discussions Between PRT and Healthpeak

21.     On July 1, 2023, Defendant Thomas and Scott M. Brinker, the President and CEO of Healthpeak, met in person to explore potential strategic opportunities between the two companies, including, among other things, the possibility of a business combination. In the months that followed, in consultation with their respective boards and advisors, discussions between Defendant Thomas and Mr. Brinker concerning the terms of a potential combination progressed to negotiation of the Merger Agreement.

22.     During the course of the discussions between PRT and Healthpeak, the Board did not authorize its financial advisors to reach out to any alternative potential counterparties.

### PRT's Financial Advisors

23.     On August 25, 2023, Defendant Thomas contacted representatives of BofA Securities, which had provided various financing services to PRT in the past, to conduct a

---

[1] Any emphasis in quoted language is added, unless otherwise noted.

5

preliminary financial and strategic analysis of the potential merits of a business combination with Healthpeak based on publicly available information.

24. On September 19, 2023, BofA Securities provided a disclosure memorandum to PRT containing information about BofA Securities' past relationships with Healthpeak.

25. On October 16, 2023, an unnamed member of the Board contacted KeyBanc Capital Markets Inc. ("KeyBanc") and asked KeyBanc to serve as an additional financial advisor in connection with the potential business combination with Healthpeak. PRT engaged KeyBanc because of, among other factors, "its *familiarity* with *both* PRT and Healthpeak."

26. On October 24, 2023, BofA Securities provided an updated disclosure memorandum to PRT providing information about BofA Securities' past relationships with Healthpeak.

27. On October 25, 2023, KeyBanc formally executed its engagement letter to serve as a financial advisor to PRT in connection with the proposed transaction with Healthpeak.

28. On October 26, 2023, during a meeting of the Board, KeyBanc disclosed the nature and extent of its relationship with Healthpeak, and shared its views regarding the potential transaction with Healthpeak.

29. Later that day, BofA Securities formally executed its engagement letter to serve as a financial advisor to PRT in connection with the proposed transaction with Healthpeak.

30. On October 28, 2023, BofA Securities provided its opinion ("Fairness Opinion") to the Board that the Exchange Ratio was fair to PRT stockholders. Thereafter, the Board approved the Merger and recommended that PRT stockholders approve the Merger.

31. As part of its description of the Fairness Opinion, the Proxy disclosed the following potential conflicts affecting BofA Securities:

In October 2023, prior to the execution of the Merger Agreement, members of Healthpeak management approached representatives of BofA Securities and its affiliates, including Bank of America, N.A., about acting as a lender, administrative agent, joint lead arranger, and bookrunner in connection with a new $500 million term loan, which Healthpeak management contemplated executing in connection with Healthpeak's existing credit facility. BofA Securities informed Physicians Realty Trust of the potential term loan, and advised Physicians Realty Trust of the potential or perceived conflicts of interest that may arise or result from the participation of BofA Securities and/or its affiliates in such term loan and the fees payable to BofA Securities and/or its affiliates in connection therewith. After considering such potential or perceived conflicts of interest, Physicians Realty Trust provided its consent to BofA Securities with respect to its (or its affiliates') participation in the potential term loan. The terms thereof remain subject to discussion among Healthpeak and the applicable other parties thereto, and the foregoing disclosure should not be deemed to constitute a commitment of BofA Securities or any of its affiliates to provide or arrange any potential financing transactions.

\* \* \*

Physicians Realty Trust has agreed to pay BofA Securities for its services in connection with the Company Merger *an aggregate fee of $18 million, a portion of which was payable in connection with its opinion and a significant portion of which is contingent upon the completion of the transaction*.

\* \* \*

*Physicians Realty Trust has agreed to pay BofA Securities for its services in connection with the Company Merger an aggregate fee of $18 million, a portion of which was payable in connection with its opinion and a <u>significant</u> portion of which is contingent upon the completion of the transaction*.

BofA Securities and its affiliates in the past have provided, currently are providing, and in the future may provide, investment banking, commercial banking and other financial services to Physicians Realty Trust and certain of its affiliates, and have received or in the future may receive compensation for the rendering of these services, including having acted or acting as documentation agent and lender in a $1.4 billion credit facility for Physicians Realty Trust. BofA Securities and its affiliates also provide certain treasury services to Physicians Realty Trust. *From November 2021 through October 2023, BofA Securities and its affiliates derived aggregate revenues from Physicians Realty Trust and its affiliates of approximately $1.0 million for investment and corporate banking services.*

In addition, BofA Securities and its affiliates in the past have provided, currently are providing, and in the future may provide investment banking, commercial banking and other financial services to Healthpeak and certain of its affiliates, and have received or in the future may receive compensation for the rendering of these services, including having acted or acting as (i) a selling group member on a $1.5

7

billion registered at the-market equity offering program for Healthpeak; (ii) a placement agent on a $2.0 billion commercial paper program; (iii) from 2021 to 2023, as a selling group member on a $1.5 billion registered at-the-market equity offering program for Healthpeak; (iv) in 2023, as joint book-running manager on a $400 million registered senior unsecured notes offering for Healthpeak; and (v) in 2023, as a joint book-running manager on a $350 million registered senior unsecured notes offering for Healthpeak. BofA Securities and its affiliates have acted as administrative agent, joint bookrunner, co-lead arranger and lender on a $500 million term loan facility for Healthpeak, and as administrative agent, joint bookrunner, co-lead arranger, letter of credit lender, and lender on a $3.0 billion revolving credit facility for Healthpeak, and the counterparty on an interest rate swap agreement relating to $250 million aggregate principal amount of the term loan facility. In addition, BofA Securities and its affiliates also may be a lender in a new term loan that Healthpeak expects to enter into, for which services BofA Securities and its affiliates would expect to receive customary fees. BofA Securities and its affiliates are a market maker in Healthpeak, and also provide certain treasury services to Healthpeak. ***From November 2021 through October 2023, BofA Securities and its affiliates derived aggregate revenues from Healthpeak and its affiliates of approximately $10.0 million for investment and corporate banking services.***

32. In sharp contrast to the fulsome disclosures in the Proxy concerning the compensation and potential conflicts of BofA Securities, there is no disclosure in the Proxy whatsoever concerning the compensation and potential conflicts of KeyBanc even though the press release announcing the Merger identified KeyBanc as a "lead financial advisor" for PRT in connection with the Merger. Further, the Proxy discloses the name of the Board member who approached BofA to serve as a financial advisor (i.e., Defendant Thomas on August 25, 2023) (Proxy at 44), but does *not* provide the name of the Board member who approached KeyBanc on October 16, 2023, to serve as a financial advisor. (Proxy at 47). The extent of the nondisclosures concerning the compensation and potential conflicts of KeyBanc (as compared to the fulsome disclosures concerning the compensation and potential conflicts of BofA) suggest a deliberate effort to conceal the compensation and potential conflicts of KeyBanc from PRT stockholders.

**The Proxy Contains Material Omissions That Render Statements Therein Misleading**

33. Defendants disseminated a false and misleading Proxy to PRT stockholders that makes partial disclosures and omits material information that render statements in the Proxy misleading, and thus deprive Plaintiff and other PRT stockholders of their right to cast fully informed votes with respect to the Merger.

*Material Omissions Concerning (i) the Compensation and Potential Conflicts of KeyBanc, and (ii) the Extent of the Contingent Nature of the Compensation Provided to BofA for its Services in Connection with the Merger*

34. Because of the central role played by financial advisors with respect to the evaluation and negotiation of strategic alternatives, the compensation and potential conflicts of a target's financial advisors are material facts that must be disclosed to stockholders before a vote even with respect to financial advisors that have not provided a fairness opinion. Further, disclosure concerning compensation must include the amount of such compensation, and whether such compensation is contingent on the consummation of the transaction. Finally, once a proxy speaks on an issue or topic, there is a duty to tell the whole truth concerning that issue or topic.

35. Here, the Proxy discloses that PRT retained KeyBanc to serve as a financial advisor with respect to the proposed transaction with Healthpeak. Indeed, the press release announcing the Merger identified KeyBanc as one of PRT's "lead financial advisors" (together with BofA Securities). While KeyBanc did not provide a fairness opinion, it concededly provided advice to the Board regarding the potential transaction with Healthpeak at the Board meeting on October 26, 2023 (and plausibly at other points given the characterization of KeyBanc as a "lead financial advisor"). Nevertheless, the Proxy fails to disclose any information whatsoever concerning the amount and nature of the compensation paid by PRT to KeyBanc in connection with the Merger.

9

36. Additionally, the Proxy advises that (i) PRT retained KeyBanc in part due to KeyBanc's "familiarity" with Healthpeak, and (ii) at a Board meeting on October 26, 2023, KeyBanc disclosed the nature and extent of its relationship with Healthpeak. The Proxy fails to disclose, however, the nature of the services previously provided and/or concurrently being provided by KeyBanc to Healthpeak, and the compensation paid to KeyBanc for such services. Likewise, there is no disclosure in the Proxy concerning services previously and/or concurrently provided by KeyBanc to PRT, and the compensation paid to KeyBanc for such services.

37. Finally, the Proxy fails to identify the unnamed Board member who approached KeyBanc on October 16, 2023, to serve as a financial advisor.

38. In contrast, the Proxy provides fulsome disclosure concerning the nature of the services provided by BofA Securities to both PRT and Healthpeak, and the amount and nature of the compensation paid to BofA Securities for such services. It also identifies Defendant Thomas as the Board member who approached BofA on August 25, 2023, to serve as a financial advisor.

39. The Proxy further discloses that "Physicians Realty Trust has agreed to pay BofA Securities for its services in connection with the Company Merger an aggregate fee of $18 million, a portion of which was payable in connection with its opinion and a *significant portion* of which is contingent upon the completion of the transaction." Disclosing only that a "significant portion" of BofA's fee in connection with the Merger is contingent is insufficient. Instead, the Proxy must quantify the amount of the fee paid to BofA that is contingent.

40. Based on the foregoing, in advance of the Stockholder Vote, Defendants must disclose (i) the name of the Board member who approached KeyBanc to serve as a financial advisor; (ii) the compensation payable by PRT to KeyBanc in connection with the Merger, and the extent to which such compensation is contingent in nature; (iii) the nature of the services

10

previously and/or concurrently provided by KeyBanc to both PRT and Healthpeak within two years of the date of the Proxy, and the aggregate amount of the compensation paid to KeyBanc for such services so that PRT stockholders can contextualize the magnitude of any potential conflict of interest that KeyBanc might have in advising PRT concerning the Merger; and (iv) the percentage of BofA's compensation in connection with the Merger that is contingent upon consummation of the Merger.

*Material Omissions Concerning the Compensation and Potential Conflicts of BMO Capital Markets*

41. The press release announcing the Merger states that "BofA Securities and KeyBanc Capital Markets Inc. are serving as lead financial advisors, ***BMO Capital Markets Corp. is serving as financial advisor***, and Baker McKenzie is acting as legal advisor to Physicians Realty Trust."

42. There is, however, no disclosure in the Proxy whatsoever concerning the nature of the services provided by BMO Capital Markets Corp. ("BMO") to PRT in connection with the Merger, and the nature and amount of the compensation to be paid to BMO for such services. Nor is there any disclosure concerning any potential conflicts of BMO arising from past and/or concurrent services provided by BMO to PRT and/or Healthpeak. Defendants must disclose such information to PRT stockholders in advance of the Stockholder Vote.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants
for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

43. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

44. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any Proxy, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

45. Defendants disseminated a false and misleading Proxy, which made statements that are false and misleading, and omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts from the Proxy necessary to make statements made therein—in light of the circumstances under which they were made—not misleading.

47. Yet, as specified above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants (i) made untrue statements of material fact in the Proxy, and/or (ii) omitted material facts from the Proxy necessary to make statements therein— in light of the circumstances under which they were made—not misleading, in order to induce PRT stockholders to vote in favor of the Merger. Defendants were at least negligent in filing the Proxy with these material misrepresentations and omissions.

48. The material misrepresentations and omissions in the Proxy specified above are material insofar as a reasonable PRT Stockholder would view disclosure of the omitted facts

specified above as significantly altering the "total mix" of information made available to PRT stockholders.

49. Since, according to the Proxy, approval of the Merger by a majority of PRT stockholders is necessary to approve the Merger, the Proxy soliciting the votes of PRT stockholders is an essential link in the accomplishment of the Merger. Thus, causation is established.

50. Plaintiff and other PRT stockholders have no adequate remedy at law, and are threatened with irreparable harm insofar as Plaintiff and other PRT stockholders will be deprived of their entitlement to cast fully informed votes with respect to the Merger if such material misrepresentations and omissions are not corrected before the Stockholder Vote. Therefore, injunctive relief is appropriate.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of PRT within the meaning of Section 20(a) of the Exchange Act, as alleged herein.  By virtue of their positions as officers and/or directors of PRT, and participation in, and/or awareness of the negotiation of the Merger, and/or intimate knowledge of the contents of the Proxy filed with the SEC in order to solicit the votes of PRT stockholders to vote in favor the Merger, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of PRT with respect to the Proxy, including the content and dissemination of the various statements in the Proxy that are materially false and misleading, and the omission of material facts specified above.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements that were false and misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. Each of the Individual Defendants had direct and supervisory involvement in the negotiation and approval of the Merger, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised same.

55. By virtue of the foregoing, the Individual Defendants had the ability to exercise control over and did control a person or persons who violated Section 14(a), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.

56. Plaintiff and other PRT stockholders have no adequate remedy at law, and as a result of the Individual Defendants' violations of Section 20(a) of the Exchange Act, are threatened with irreparable harm by virtue of being deprived of their entitlement to cast fully informed votes with respect to the Merger. Therefore, injunctive relief is appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Enjoining Defendants and their counsel, employees and all other agents and persons acting in concert with them from proceeding with and holding the Stockholder Vote and consummating the Merger, unless and until Defendants disclose and disseminate to PRT stockholders the material information specified above that has been omitted from the Proxy, and correct any false and misleading statements in the Proxy;

B.  Finding Defendants liable for violating Sections 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

C.  Finding the Individual Defendants liable for violating Section 20(a) of the Exchange Act;

D.  Rescinding, to the extent already implemented, the Merger Agreement or any of the transactions contemplated thereby, or granting Plaintiff and other PRT stockholders rescissory damages;

E.  Directing Defendants to account to Plaintiff and other PRT stockholders for all damages suffered as a result of their misconduct;

F.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

G.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 4, 2024                **WOHL & FRUCHTER LLP**

By:/s *Joshua E. Fruchter*
Joshua E. Fruchter (JF2970)
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Tel: (845) 290-6588
Fax: (718) 504-3773
Email: jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*